## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 07 2019, 9:12 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Melinda K. Jackman-Hanlin
Greencastle, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of S.P. and J.P. (Minor Children)

and

S.P (Father) and R.S. (Mother),

*Appellants-Respondents,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

March 7, 2019

Court of Appeals Case No. 18A-JT-2034

Appeal from the Hendricks Superior Court

The Honorable Karen Love, Judge

Trial Court Cause No. 32D03-1608-JT-6 & 32D03-1608-JT-7

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellants-Respondents, R.S. (Mother) and S.P. (Father) (collectively, Parents), appeal the termination of their parental rights to their minor children, S.P. and J.P. (collectively, Children).

We affirm.

# ISSUES

Parents present two issues on appeal, which we restate as:

(1) Whether the Indiana Department of Child Services (DCS) presented clear and convincing evidence to support the trial court's termination of Parents' rights; and

(2) Whether Parents' due process rights were violated when the fact-finding hearing was not completed within the statutorily-mandated timeframe.

# FACTS AND PROCEDURAL HISTORY

Mother and Father are the natural parents of S.P., born January 3, 2014, and J.P., born March 3, 2015. On April 6, 2015, DCS received a report that Mother was addicted to pain medication and that J.P. was born with morphine in his urine. Children were removed from Parents' home on April 7, 2015, and were never returned to their care. On April 14, 2015, DCS filed petitions alleging that Children were children in need of services (CHINS) based on allegations that J.P. had been born with a "very high" level of morphine in his urine, Mother and Father had tested positive for Oxycodone without having a valid

prescription, and Mother and Father refused to meet with DCS. (Appellants' App. Vol. II, pp. 59-64). On June 23, 2015, Mother admitted that she had untreated substance abuse issues, she had tested positive for unprescribed medications after J.P.'s birth, and that she last used unprescribed medication on June 16, 2015. Father admitted that he had untreated substance abuse issues and that he had used unprescribed medication on June 16, 2015. Parents also admitted that their substance abuse would not be remedied without the intervention of DCS. On July 15, 2015, as part of its dispositional order in the CHINS proceedings, the trial court ordered Parents to participate in a substance abuse assessment, follow treatment recommendations, remain drug and alcohol free, and to participate in random drug screens.

[5] DCS referred Parents to Cummins Behavioral Health (Cummins) where they underwent their first substance abuse assessment on July 15, 2015. Parents were recommended individual therapy, once a week. From July 21, 2015, to November 2015, Mother attended four individual therapy sessions. Mother never acknowledged that she was addicted to prescription medication. Mother reported during therapy that she used Oxycodone for pain management. After her therapist recommended that Mother seek pain management through a physician and provide documentation, Mother stopped attending therapy. Mother tested positive for Oxycodone throughout her treatment at Cummins. Mother also failed to provide several drug screens. On January 12, 2016, Mother was discharged unsuccessfully from services at Cummins for non-attendance.

[6]     Father attended eleven therapy sessions at Cummins over six months. Father attended his last session on January 18, 2016, and never returned. Father was discharged unsuccessfully from services through Cummins on March 9, 2016, due to non-attendance. Father tested positive for Oxycodone throughout his treatment at Cummins and also failed to provide several drug screens. Mother and Father did not provide any drug screens from approximately January 26, 2016, to April 13, 2016.

[7]     In April 2016, Mother requested a referral for substance abuse treatment, and DCS referred Parents to Families First, where they had their second substance abuse assessments. Mother began intensive out-patient (IOP) group therapy there in June 2016. IOP consisted of three-hour group therapy sessions, three times a week, for eight weeks. Mother attended six IOP sessions in June and July of 2016. Mother tested positive for alcohol and Tramadol during her treatment at Families First. Mother stopped attending IOP after July 12, 2016, and was discharged unsuccessfully from treatment.

[8]     Father started treatment at Families First on June 2, 2016, in an out-patient program consisting of a two-hour session, once a week, for twelve weeks. Father attended four out-patient sessions in June and July 2016 but tested positive for Oxycodone, Tramadol, and alcohol during that time. Father claimed that he had a prescription for Tramadol but never produced it to his therapist. Father also claimed that he believed that he could consume alcohol while in substance abuse therapy. As per Families First policy, because Father had tested positive for illegal substances during out-patient treatment, he was

referred to IOP. After this referral was made, Father stopped attending treatment at Families First and, like Mother, was discharged unsuccessfully on July 21, 2016. DCS made a second set of referrals to Families First for Parents in August of 2016, but they never engaged. Father failed to provide random drug screens in August and September 2016.

[9] On August 31, 2016, DCS filed a petition to terminate Parents' rights (TPR) to Children.[1] On November 2, 2016, the trial court held a TPR fact-finding hearing. Due to their behavior in court, Mother and Father were drug tested directly after this hearing, and both tested positive for Oxycodone. Mother also tested positive for cocaine and morphine.

[10] In January of 2017, DCS made another substance abuse referral for Parents, this time to Life Recovery. Mother completed her assessment on January 5, 2017, and started group IOP therapy. Father was unable to complete his assessment in January because he arrived for the assessment under the influence of alcohol and opiates. Father completed his substance abuse assessment on February 2, 2017, and began group IOP therapy.

[11] On February 21 and 22, 2017, the trial court held another TPR hearing. DCS sought to have the results of Parents' drug screens admitted into evidence over objection from Mother's counsel. While arguing the objection, it came to light that DCS had only received copies of the drug screen results shortly before the

---

[1] The CHINS and TPR cases proceeded in tandem.

start of the hearing, and as a result, opposing counsel had just received them. The trial court took a recess so that the parties could decide how to proceed. After that recess, Mother's counsel informed the trial court that the parties wished to delay the completion of the hearing for ninety days so that the drug screen results could be examined. Mother's counsel informed the trial court that

> my client[] is waiving her right to have the hearing within 180 days, and, so, we're willing to go on the record to say that we will not file a motion to dismiss based on the 180 days. I think the statute permits that and allows us to do that. The reason why we're asking this is 'cuz it will deal with any of the potential procedural issues that occurred . . . So, there would be no prejudice to my client if we do this. It'll also be no prejudice to [DCS] and speaking for [the GAL], she does not object either.

(Transcript Vol. II, p. 211). Father's counsel confirmed that Father also agreed to a delay in the proceedings. The parties agreed to reconvene the hearing on June 14, 2017. Father and Mother then affirmed on the record that they were willing to waive the requirement that the TPR hearing be concluded within 180 days of being commenced and agreed that the hearing be reconvened on June 14, 2017.

[12] In the early spring of 2017, Mother completed twenty-eight of her thirty IOP sessions at Life Recovery. However, Mother tested positive for Tramadol throughout her treatment at Life Recovery, and she tested positive for Oxycodone twice in April 2017. Mother stopped attending IOP on April 25, 2017, and was discharged unsuccessfully from services there. Father tested

positive for alcohol and Tramadol while attending treatment at Life Recovery. On March 22, 2017, Father tested positive for Hydrocodone and Oxycodone. As a result, he was referred to in-patient treatment at the end of March 2017. Father did not engage in any in-patient treatment. During March, April and May of 2017, Mother and Father tested positive on numerous occasions for cocaine, morphine, and Oxycodone.

[13] On June 14, 2017, the trial court reconvened the TPR hearing. Mother was not in substance abuse treatment. Father had requested a referral for in-patient treatment in May but had not completed his assessment. Family Case Manager Jessica Blevins testified that since Parents continued to test positive for illegal substances over the two years the case had been pending, it was her opinion that the issue would not be remedied.

[14] On July 31, 2018,[2] the trial court entered its Order terminating Parents' rights to Children. The trial court entered the following relevant findings:

> 170. Upon removal of [Children], DCS referred [Parents] to service providers for substance abuse treatment multiple times. [Parents] have inconsistently engaged in substance abuse treatment and have continued to test positive for illegal substances. [Parents] cannot manage to maintain negative drug

---

[2] Fact-finding in this matter was concluded on June 16, 2017, and the parties submitted their proposed findings and conclusions on July 17, 2017. The trial court did not issue its order until over one year after the parties made their submissions.

screens for a substantial period of time despite DCS involvement and constant drug screens.

171. [Parents] have repeatedly failed to address their substance use while in treatment. [Parents] have not made progress.

172. [Children] are still very young and rely on their caregivers to provide for their basic needs, including supervision.

173. Despite the potential termination of their parental rights looming for several months, [Parents] continued to test positive for illegal substances including cocaine.

(Appellants' App. Vol. II, p. 52). The trial court entered the following relevant conclusions:

12. The evidence is clear and convincing that the reasons for which [Children] were removed from [Parents] will not be remedied. While [Parents] have been able to test negative for periods of time during the case, they have failed to demonstrate their ability to maintain that sobriety long term.

13. [Children] were removed from [Parents'] care due to substance use. [Parents] continue to use illegal substances and have failed to participate in substance abuse treatment. It is reasonable to believe the reasons DCS became involved with the family (substance abuse) will continue to be a problem and interfere with [Parents'] ability to properly supervise [Children].

(Appellants' App. Vol. II, p. 55).

Parents now appeal. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

### I. *Sufficiency of the Evidence Supporting Termination*

### A. *Standard of Review*

[16] Parents argue that the trial court's Order terminating their rights to Children was not supported by clear and convincing evidence. It is well-settled that when reviewing the evidence supporting the termination of parental rights we neither reweigh the evidence nor determine the credibility of witnesses. *In re E.M.*, 4 N.E.3d 636, 642 (Ind. 2014). In addition, we consider only the evidence that supports the judgment and the reasonable inferences to be drawn from that evidence. *Id.* "We confine our review to two steps: whether the evidence clearly and convincingly supports the findings, and then whether the findings clearly and convincingly support the judgment." *Id.* We must give due regard to the trial court's opportunity to judge the credibility of witnesses firsthand, and we do not set aside the trial court's findings or judgment unless it is clearly erroneous. *Id.*

### B. *Termination of Parents' Rights*

[17] "[O]ne of the most valued relationships in our culture" is that between a parent and his or her child. *In re G.Y.*, 904 N.E.2d 1257, 1259 (Ind. 2009), *reh'g denied.* Indeed, "[a] parent's interest in the care, custody, and control of his or her children is 'perhaps the oldest of the fundamental liberty interests.'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). Accordingly, the Fourteenth Amendment to the United States Constitution safeguards "the traditional right of parents to establish a home and raise their children." *Id.*

Nevertheless, parental interests are not absolute; rather, termination of parental rights is appropriate when parents are unable or unwilling to meet their parental responsibilities. *In re A.B.*, 887 N.E.2d 158, 164 (Ind. Ct. App. 2008).

[18] Termination of parental rights is an extreme sanction that is intended as a "last resort" and is available only when all other reasonable efforts have failed. *C.A. v. Ind. Dep't of Child Servs.*, 15 N.E.3d 85, 91 (Ind. Ct. App. 2014). As such, before a termination of parental rights is merited, the State is required to prove a host of facts by clear and convincing evidence, the most relevant for our purposes being that there is a reasonable probability that the conditions which resulted in the children's removal or continued placement outside the home will not be remedied by the parents and that there is a reasonable probability that the continuation of the parent-children relationship poses a threat to the well-being of the children.[3] Ind. Code §§ 31-35-2-4(b)(2)(B)(i)-(ii); 31-37-14-2.

### C. *Failure to Remedy Conditions*

[19] When reviewing a trial court's determination that the conditions that resulted in a child's removal or placement outside the home will not be remedied, we engage in a two-step analysis. *E.M.*, 4 N.E.3d at 642-43. First, we must identify the conditions that led to removal or placement; second, we determine

---

[3] Although Parents state on page 19 of their Brief that they also contest the trial court's finding that termination was in Children's best interests and cite the portion of the termination statute pertaining to best interests, they do not develop that argument with any other legal authority or citations to relevant portions of the record. We find that they have waived any argument that termination was not in Children's best interests. Ind. Appellate Rule 46(8)(a).

whether there is a reasonable probability that those conditions will not be remedied. *Id.* at 643. When engaging in the second step of this analysis, a trial court must judge a parent's fitness as of the time of the TPR proceeding, taking into account evidence of changed conditions, and balancing any recent improvements against habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id.* This delicate balance is entrusted to the trial court, and a trial court acts within its discretion when it weighs a parent's prior history more heavily than efforts made only shortly before termination. *Id.* "Requiring trial courts to give due regard to changed conditions does not preclude them from finding that parents' past behavior is the best predictor of their future behavior." *Id.*

[20] Here, Children were removed from Parents' care due to Parents' substance abuse, and Parents admitted during the CHINS proceedings that they had substance abuse issues that would not be remedied without the assistance of DCS. Parents were referred for out-patient substance abuse treatment at Cummins, Families First (twice), and Life Recovery. Parents were also referred at different times for in-patient treatment. Parents attended some services and showed at least an initial willingness to attend treatment each time they restarted services with another substance abuse assessment. However, Parents never completed treatment at any of their referrals. Although Parents were apparently able to refrain from drug use for short periods, they tested positive for illegal substances throughout the underlying CHINS case and even after the initiation of the TPR proceedings. Father last tested positive for Oxycodone

March 22, 2016, and Mother last tested positive for Oxycodone April 28, 2016, just months before fact-finding in the TPR proceedings was completed. We conclude that Parents made very little progress in addressing their substance abuse despite the array of services that were offered to them and that the trial court reasonably concluded that this lack of progress meant that there was a reasonable probability that Parents would not rectify their substance abuse. *See In re A.S.*, 17 N.E.3d 994, 1005 (Ind. Ct. App. 2014) (affirming the trial court's conclusion that there was a reasonable probability that Parents' substance abuse would not be remedied in light of their failure to complete treatment), *trans. denied*.

[21] Parents argue that termination cannot be based entirely on conditions that existed in the past but no longer exist. While we agree with this general principle, given that Parents continued to test positive for illegal substances throughout their treatment and almost to the end of fact-finding in this matter, we find very little evidence of changed conditions. Parents also direct our attention to the fact that they did abstain from drug use for some periods throughout the case, they attended 12-step meetings, and to what they characterize as their success in treatment when they attended. However, as noted by the trial court, any advances made by Parents were short-lived, and Parents' arguments are unavailing inasmuch as they require us to consider evidence that does not support the trial court's judgment, in contravention to our standard of review. *See E.M.*, 4 N.E.3d at 642. Finding support for the trial court's conclusion that there was a reasonable probability that the reason for

Children's removal would not be remedied, we affirm the trial court's termination of Parents' rights.[4]

## II. *Timeliness of Completion of TPR Hearing*

[22] Parents contend that their due process rights were violated when the TPR fact-finding hearing was not completed within the mandated timeframe.[5] Pursuant to Indiana Code section 31-35-2-6(a), a hearing on a TPR must be completed within 180 days of its filing. A failure to complete the TPR hearing within the time required subjects the TPR to dismissal without prejudice. I.C. § 31-35-2-6(b).

[23] Here, DCS filed its TPR on August 31, 2016, and DCS does not dispute that, pursuant to statute, the TPR hearing was to be completed by February 27, 2017. However, DCS argues that Parents waived any challenge to the timeliness of the completion of the TPR hearing, and we agree. At the February 22, 2017, portion of the TPR hearing, Parents both explicitly waived their right to have the hearing completed within the 180-day limit so that the parties could have time to examine the drug screen results that had only recently become available

---

[4] Having concluded that there was a reasonable probability that the conditions meriting removal or continued placement would not be remedied, we decline to address Parents' argument regarding the trial court's conclusion that their continued relationship with Children posed a threat. *See In re A.P.*, 882 N.E.2d 799, 807 (Ind. Ct. App. 2008) (noting that the termination statute is written in the disjunctive and declining to address Father's argument regarding his continued threat to the child where the evidence supported trial court's conclusion that the conditions meriting removal had not been remedied).

[5] Parents also briefly argue that the trial court's delay in entering its Order violated their due process rights. Parents do not support this argument with legal authority, and so we find that they have waived this issue. App. R. 46(8)(a). Although we do not condone the delay by the trial court in entering its Order, our own research revealed no instances where such a delay was found to be a due process violation.

to them. This acquiescence in the setting of a hearing date outside of the statutory requirement resulted in their waiver of the issue. *In re N.C.*, 83 N.E.3d 1265, 1267 (Ind. Ct. App. 2017). Parents do not address the effect of their explicit waiver. Finding that Parents explicitly waived their right to have the TPR fact-finding hearing completed within 180 days of its commencement, we affirm the trial court's TPR Order.

# CONCLUSION

[24] Based on the foregoing, we conclude that the trial court's Order was supported by clear and convincing evidence and that Parents waived their right to have the TPR hearing concluded within the mandated timeframe.

[25] Affirmed.

[26] Kirsch, J. and Robb, J. concur